BATES v. SMITH.

1. LANDLORD AND TENANT—BREACH OF COVENANT FOR QUIET ENJOYMENT—EVICTION.

Where long-term lease contained usual covenant for quiet enjoyment, and supplemental lease gave lessees right to raze buildings and convert premises into parking lot, if lessor's mortgagee lawfully prevented razing buildings, it would amount to breach of covenant for quiet enjoyment.

2. SAME—CONSTRUCTIVE BREACH.

Refusal of consent to razing buildings by lessor's mortgagee, provided for in lease, and commencement of foreclosure proceedings by it did not amount to eviction of lessees, nor did it amount to constructive breach of covenant for quiet enjoyment, since there was no actual dispossession, nor were lessees actually prevented from razing buildings.

3. SAME—SURRENDER AND ACCEPTANCE—MITIGATING DAMAGES—WAIVER OF RIGHTS.

Where lessor refused to recognize lessees' right to surrender premises, but finally accepted keys for declared purpose of mitigating damages, and, without waiving any rights, razed

On breach of covenant for quiet enjoyment, see annotation in 62 A. L. R. 1257.

buildings and converted premises into parking lot, as provided for in lease, his acceptance, under circumstances, did not effect surrender either in fact or by operation of law.

Appeal from Wayne; Webster (Arthur), J. Submitted April 15, 1932. (Docket No. 124, Calendar No. 36,416.) Decided July 18, 1932. Rehearing denied January 25, 1933, on condition that appellee remit $75 from judgment.

Assumpsit by Stanley F. Bates against Angus Smith and Fred L. Smith for rent alleged to be due under a lease. Summary judgment for plaintiff. Defendants appeal. Affirmed.

*Butzel, Levin & Winston* (*Morris W. Stein*, of counsel), for plaintiff.

*Prentis, Fitch & Carpenter,* for defendant.

POTTER, J. Plaintiff sued defendants for rent alleged to be due upon a lease and supplemental lease of valuable Detroit real estate. Defendants answered, alleging several matters of defense, the principal of which was eviction. Plaintiff replied to defendants' answer and moved for summary judgment. Defendants filed counter affidavits and exhibits. A summary judgment for plaintiff was rendered by the trial court for $3,632.73. Defendants appeal. The trial judge filed an opinion in support of the judgment rendered which clearly states and correctly disposes of the issues. We adopt it.

"Plaintiff is suing to recover rent claimed to be due under the terms of a long-term lease and supplemental lease covering a valuable piece of property on Woodward avenue in Detroit. Defendants defend on the ground that they were evicted.

"There were substantial buildings on the leased premises, and under the terms of the original lease the lessee was obliged to replace them with a build-

ing costing at least $100,000, depositing securities to the extent of $100,000 before tearing down the old buildings.

"The change in real estate conditions probably brought about the supplemental lease of October 31, 1930. This new lease was between plaintiff and Angus Smith (the original lessee) and Fred L. Smith, his brother (a new party to the lease), and, among other things, it postponed the erection of the new building until 1940 and granted lessees the right to tear down existing structures and cement over the full area in order to utilize the premises for parking lot purposes. Except as modified the old lease remained in effect. All rent due up to December 1, 1930, was paid by defendants. They made preparations to tear down the buildings and convert the premises into a parking lot. It was then discovered that there were two mortgages given by lessor and consent of the mortgagees had not been obtained to razing the buildings. There is some question whether consent of the first mortgagee is in proper form, but the principal controversy centers around the second mortgage. This was held by the Briggs Company and was under foreclosure. After some negotiations a conditional consent to the razing of the building was given, the condition being that a payment of $4,500 be made on account of the mortgage. Plaintiff attempted to place the burden of raising $2,500 of this amount upon defendants, the same to be deducted from the rental to become due December 1, 1930. Defendants refused to accept this proposition. They claimed that the failure of plaintiff to obtain the consent of both mortgagees to the razing of the buildings amounted to an eviction and accordingly tendered the keys and surrendered the lease.

"Plaintiff contends that he was under no obligation to secure the consent of his mortgagees, but that this obligation rested upon defendants, basing his

contention in this respect upon paragraph 7 of the supplemental agreement, which reads as follows:

" '7. It is agreed and understood that the operative effect of the agreement and covenants herein contained is in no way dependent or conditional upon the placing into effect of the parking lot venture mentioned aforesaid, nor upon the success of such operations.'

"I cannot agree with plaintiff's contention. Paragraph 4 of the supplemental agreement expressly gives defendants the right to raze the buildings and convert the premises into a parking lot. The original lease contains the usual covenant for quiet enjoyment. Combining these two provisions it seems to me to follow logically that if either mortgagee lawfully prevented the razing of the building, it would amount to a breach of the covenant for quiet enjoyment.

"However, it appears to me that the important question to be decided is whether the steps taken by the second mortgagee to foreclose its mortgage and the refusal to give its consent except upon terms which plaintiff did not meet amounted to a breach of the covenant for quiet enjoyment. Can defendants claim to have been evicted merely because the second mortgagee expressly refused to consent to a razing of the buildings? It must be borne in mind that the second mortgagee had taken no steps to secure injunctive relief against any acts of the defendants. Such action might possibly present a more serious problem. The second mortgagee had no right to the possession of the premises. That right still remained with the lessees. Until the mortgage had been foreclosed and the equity of redemption had expired the purchaser at foreclosure sale could not dispossess defendants holding under their lease. At any time prior to that date plaintiff could redeem from foreclosure and thereby prevent a breach of his covenant for quiet enjoyment. Indeed, had the Briggs Company gone into court to secure an injunction against tearing down the buildings plaintiff

would still have been able to prevent the issuance of the injunction by satisfying the mortgage. Consequently, in my opinion, there can be no constructive breach of the covenant for quiet enjoyment; there must be an actual dispossession of the defendants, either by actually preventing the razing of the buildings or by actually taking possession of the premises. It follows that the acts of plaintiff and his mortgagees in the instant case do not constitute an eviction which warranted defendants in surrendering their lease.

"The remaining question to be determined is whether in accepting the keys to the premises plaintiff accepted defendants' surrender of the premises in termination of the leasing. Counsel on both sides contend that there is no question of fact to be decided in answering the question, but that its determination is one purely of law.

"The letters passing between counsel from the latter part of November until the middle of December, cover this phase of the case very fully. * * * From this correspondence it is apparent that defendants claimed an eviction, and, relying upon this claim of an eviction, announced an abandonment and surrender of the premises, tendering the keys and various papers in token of this surrender. On the other hand, plaintiff denied there had been an eviction, refused the tender, and announced the intention of holding the defendants on the lease. After this correspondence had passed one of plaintiff's attorneys visited the office of defendants' counsel and took the keys, stating that it was without waiver of plaintiff's rights and without recognition of any surrender, but for the purpose of mitigating damages. Plaintiff subsequently razed the buildings and converted the premises into a parking lot.

"In this situation it is evident that there was not an express surrender by mutual consent because the minds of the parties did not meet upon such a proposition. It remains to be seen, then, whether the acts

of the parties constituted a surrender by operation of law; whether the taking of the keys under the circumstances related and the subsequent razing of the buildings estopped plaintiff from claiming rights under the lease.

"A taking of the keys coupled with notice that it was not in recognition of a surrender would not of itself raise a presumption of surrender by operation of law. When a landlord takes possession for the purpose of rerenting he is justified in making necessary repairs. But in the ordinary case the tearing down of all buildings on the premises would be construed as an acceptance of the surrender by operation of law for the reason that such an act would usually be equivalent to an entire change in the character of the lease. The case at bar, however, is an exceptional one. The eviction claimed by defendants arises because, as they claim, they were prevented from doing this very act, viz., converting the premises into a parking lot. And it is apparent that all parties considered this as the best use to which the premises could be put under existing conditions. Viewed in this light, the plaintiff's act in tearing down the buildings and cementing over the lot must be considered as an honest attempt to mitigate damages and not as an acquiescence in the proposed surrender by defendants.

"In my opinion, the evidence does not warrant a finding that the attempted surrender of the premises by defendants was accepted by plaintiff, either in fact or by operation of law.

"It follows that plaintiff is entitled to a judgment for the rent covered by his declaration in this case."

Judgment affirmed, with costs.

CLARK, C. J., and McDONALD, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred. BUTZEL, J., did not sit.